UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WAYNE CHAN, | : |
| *Plaintiff*, | : 1:21-cv-10498-JHR-SAK |
| v. | : OPINION |
| BOARDWALK 1000, LLC d/b/a HARD ROCK HOTEL & CASINO ATLANTIC CITY, | : |
| *Defendant*. | : |

This matter is before the Court on the Motion to Dismiss filed by Defendant Boardwalk 1000, LLC d/b/a/ Hard Rock Hotel & Casino Atlantic City ("Defendant") [Dkt. 8]. For the reasons discussed below, the Court will deny Defendant's motion, but administratively terminate this case and require Plaintiff Wayne Chan ("Plaintiff") to file a complaint with the New Jersey Division of Gaming Enforcement and the New Jersey Casino Control Commission for initial review.

**I. Overview**

Defendant operates the Hard Rock Hotel & Casino in Atlantic City, where Plaintiff played craps in 2018 and 2019. [Compl. ¶¶ 10, 13]. In 2018, Plaintiff won $177,975.00, but he lost $831,622.00 in 2019. [Compl. ¶ 14]. In total, Plaintiff lost $653,647.00. [Compl. ¶ 13]. Plaintiff claims that he "observed, on several occasions, that the dice used at the craps tables were marked, or 'scribed.'" [Compl. ¶ 17]. Plaintiff claims that the use of scribed dice violates several rules promulgated under New Jersey's Casino Control Act ("CCA"). [Compl. ¶¶ 24–28, 33–34].

1

Plaintiff filed his complaint alleging breach of contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment ("the Complaint"). Plaintiff alleges that, by scribing its dice, Defendant breached an agreement with Plaintiff to comply with CCA rules. In other words, Plaintiff alleges that Defendant breached an agreement not to cheat at craps. [Compl. ¶ 35].

Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Plaintiff failed to exhaust administrative remedies and that New Jersey Division of Gaming Enforcement ("DGE") has sole authority to enforce New Jersey gaming regulations. [Dkt. 8-1 at 15]. Defendant also argues that the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim because New Jersey gaming laws do not permit a private right of action.

## II.     Diversity Jurisdiction

Plaintiff filed his Complaint in this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. [Compl. ¶ 7]. The Complaint alleges that Plaintiff resides in New York and that Defendant operates in New Jersey. The Court issued an order *sua sponte* for Plaintiff to show cause why the Court should not dismiss the Complaint for lack of subject matter jurisdiction. [Dkt. 15]. The Court found that the Complaint alleges that Defendant is a limited liability company ("LLC") but does not plead facts as to the citizenship of the LLC's members as required to establish diversity jurisdiction. [*Id.* n.1]; *Hankins v. Doubletree Mgmt., LLC*, No. 319CV08698BRMLHG, 2021 WL 754033, at *4 (D.N.J. Feb. 26, 2021) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010)).

To cure this defect, Plaintiff submitted a certification alleging that Defendant is organized in New Jersey [Dkt. 16 ¶ 4], operates principally in New Jersey [*Id.* ¶ 5], and has a sole "principal"

who resides either in Margate City, New Jersey or Tampa, Florida. [*Id.* ¶¶ 6–8]. At this stage of the litigation, the Court is satisfied that Plaintiff has established complete diversity and that the Court has jurisdiction over this case.[1] *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 419 ("Complete diversity requires that, in cases with multiple plaintiffs or multiple defendants, no plaintiff be a citizen of the same state as any defendant.").

### III. Legal Standard

#### a. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a court's subject-matter jurisdiction over a case. *See* Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for lack of subject matter jurisdiction may either (1) 'attack the complaint on its face' or (2) 'attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings.'" *Phillip v. Atl. City Med. Ctr.*, 861 F. Supp. 2d 459, 465 (D.N.J. 2012) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008) (citing *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437–38 (D.N.J. 1999)).

Defendant only refers to the Complaint and documents attached thereto in raising its Rule 12(b)(1) objection. Thus, the Court will treat Defendant's argument as a facial challenge to subject matter jurisdiction. As such, "the Court assumes that the allegations in the complaint are true and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be

---

[1] Plaintiff's declaration also states that counsel for Defendant provided non-public information suggesting that the Seminole Tribe of Florida owns the casino, but that Plaintiff was unable to find any information that supported this assertion. [Dkt. 16 ¶ 10]. If Defendant believes that this or any other non-public information concerning Defendant's ownership can defeat diversity jurisdiction, Defendant may present this information by motion.

3

able to assert a colorable claim of subject matter jurisdiction." *D.G.*, 559 F. Supp. 2d at 491 (citing *Cardio–Medical Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983)).

### b. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. *Id.* In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6). *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Id.*

4

The Court need not accept "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**IV.   Analysis**

"[T]he Casino Control Act was enacted by the legislature in 1977 to authorize casino gaming and establish the regulatory framework for the casino industry…. The regulatory scheme

is both comprehensive and minutely elaborate." *Lomonaco v. Sands Hotel Casino & Country Club*, 614 A.2d 634, 636 (N.J. Super. Ct. Law. Div. 1992) (quoting *Knight v. Margate*, 431 A.2d 833 (N.J. 1981)).  The CCA "created a two-tiered regulatory system" in which the Casino Control Commission ("CCC") "exercises quasi-legislative and quasi-judicial power," and the DGE "conducts investigations and prosecutions." *Campione v. Adamar of New Jersey, Inc.*, 714 A.2d 299, 304 (N.J. 1998) (citing N.J.S.A. 5:12–63 and N.J.S.A. 5:12–76).  "In the exercise of its quasi-legislative power, the CCC promulgates regulations controlling the operation of authorized games, odds, and devices." *Campione*, 714 A.2d at 304 (citing N.J.S.A. 5:12–70f).  Rules regulating craps and the use and custody of dice are among those which the CCC has promulgated.  N.J. Admin. Code § 13:69E-1.11 (craps); *Id.* § 13:69E-1.16 (dice).

Defendant argues that Plaintiff cannot state an individual cause of action under the CCA, that the CCA preempts Plaintiff's claim, that Plaintiff has failed to exhaust administrative remedies under the CCA, and that the Court lacks jurisdiction under the CCA.  [*See* Dkt. 8-1].  Though distinct, these overlapping arguments all concern the extent to which the CCA permits Plaintiff to bring a common-law breach of contract action in this Court predicated on violations of the CCA's gaming regulations.

It is well settled that the CCA "does not create a private right of action" whereby plaintiffs can recover strictly for CCA violations.  *Marina Dist. Dev. Co., LLC v. Ivey*, 93 F. Supp. 3d 327, 337 n.5 (D.N.J. 2015); *see also Marcangelo v. Boardwalk Regency Corp.*, 847 F. Supp. 1222, 1228 (D.N.J. 1994).  However, "it is also clear that the CCA does not preempt all common law claims, because certain private causes of action may still be advanced by patrons or casinos." *Marina Dist. Dev. Co., LLC*, 93 F. Supp. 3d at 337 n.5 (citing *Lomonaco*, 614 A.2d at 638); *Smerling v. Harrah's Ent., Inc.*, 912 A.2d 168, 173 (N.J. Super. Ct. App. Div. 2006)

6

("[C]ourts are not ousted of jurisdiction over common law damage claims against casinos merely because the claims arise from gambling transactions.") (citations omitted). In other words, plaintiffs cannot assert claims for CCA violations *per se*, but may assert common-law claims that involve CCA violations.

Courts have determined that, with a caveat discussed below, plaintiffs may bring common-law claims grounded in CCA violations in court without first pursuing their claims with the CCC or DGE. In *Campione v. Adamar of New Jersey, Inc.*, the Supreme Court of New Jersey held that the CCA does not "delegate to the CCC the adjudication of a patron's common-law claims" and, therefore "that the Legislature did not intend the CCC to be a court of claims for actions arising under the [CCA]."[2] 714 A.2d at 307. However, the court also held that "the CCC should exercise primary jurisdiction over issues concerning the interpretation and application of the Act and the regulations." *Id.* at 308. Thus, "[t]o the extent that the resolution of a plaintiff's claim depends on an interpretation of the Act or administrative regulations, the CCC should have the first opportunity to provide that interpretation." *Id.*

To balance the CCC's expertise with and primary jurisdiction over interpretation of the CCA with the CCC's inability to decide common-law claims predicated on CCA violations, the *Campione* court held that courts "may retain jurisdiction over the dispute" but encouraged "referral to the CCC" to "assure the resolution of the controversy consistent with the views of the entity best positioned to consider the matter." *Id.* at 264; *see also Marina District Devel. Co.*, 93 F. Supp. 3d at 338 ("In order to achieve the necessary stability in the interpretations of the CCA,

---

[2] The *Campione* court also noted that the CCC does not provide plaintiffs with "adequate administrative remed[ies] to vindicate" claims for damages against casinos and, therefore, that plaintiffs seeking damages for common-law claims need not exhaust administrative remedies. *Campione*, 714 A.2d at 307–08 ("[T]he place for patrons to file private claims for damages is in the Superior Court.").

7

the New Jersey Supreme Court instructed that a court may retain jurisdiction over the dispute, but it should defer action until receipt of the CCC's or DGE's views (citing *Campione*, 714 A.2d at 308)).

In *Marina District Development Co., LLC*, Judge Hillman applied *Campione* to a breach of contract claim predicated on CCA violations analogous to Plaintiff's claims here. 93 F. Supp. 3d at 336–338. Judge Hillman found that "although the CCA does not explicitly preempt [plaintiff's] breach of contract claims against [defendants], it appears to the Court that the CCC or the DGE should consider in the first instance whether [defendants'] actions violated any provisions of the CCA." *Id.* at 339. Judge Hillman ultimately decided that, absent a showing of good cause, he would order the matter to be referred "to the appropriate administrative agency" but retain jurisdiction over the case. *Id.*

The Court agrees with Judge Hillman's interpretation and application of *Campione* and will follow his approach here.[3] Plaintiff's complaint alleges that Defendant violated the detailed and technical CCA regulations concerning the use and stewardship of marked dice. [Compl. ¶¶ 21–29]. The Court will therefore defer to the DGE and CCC, which are "best positioned to

---

[3] The Court is aware that some cases have dismissed complaints alleging claims similar to Plaintiffs' after finding that the CCA preempts these claims, *e.g. Marcangelo*, 847 F. Supp. at 1229 (D.N.J. 1994) (finding CCA preemption of breach of contract action because the terms of such a contract "are not left to the parties, but rather are completely determined by [the CCA]."), or finding that plaintiffs merely seek to enforce the CCA personally. *Mankodi v. Trump Marina Assocs., LLC*, 525 F. App'x 161, 166 (3d Cir. 2013) ("Although Mankodi attempts to frame this claim as a common law breach of contract and conversion, his complaint evidences that he is really alleging a violation of the CCA."). However, in the Court's view, the *Campione* court would not have assigned specific roles to the CCC and to courts when adjudicating common-law claims predicated on CCA violations if the New Jersey Supreme Court believed that the CCA preempted such claims.

consider" Defendant's technical compliance with CCA rules, even as it will retain jurisdiction over Plaintiff's common-law breach-of-contract claim.[4]  *Campione*, 714 A.2d at 308.

The Court will administratively terminate this case[5] and order Plaintiff to file a complaint with the DGE and CCC to determine whether Defendant's conduct has violated CCA rules and regulations.  The parties shall provide a joint status update to the Court on March 22, 2022.

## V.   Conclusion

For the reasons discussed above, the Court denies Defendant's motion to dismiss, but will administratively terminate this case and order Plaintiff file an administrative complaint with the New Jersey Division of Gaming Enforcement and the Casino Control Commission for initial review.  An appropriate order will follow.


September 22, 2021                                       /s/ Joseph H. Rodriguez

                                                                                                 Joseph H. Rodriguez, USDJ

---

[4] Although the Court will defer to the CCC's interpretation of the CCA rules, Plaintiff did not need to exhaust administrative remedies by filing a complaint with the CCC or DGE before filing this lawsuit because Plaintiff seeks contract damages that are not available through the CCC.  *See Campione*, 155 N.J. at 262–63, 714 A.2d at 307–08.

[5] An Order for Administrative Termination is a docket control device and not an order for dismissal or a decision on the merits.  *See S.E.C. v. Infinity Group Co.*, 212 F.3d 180, 197 (3d Cir.2000) (stating that "[m]atters of docket control and scheduling are within the sound discretion of the district court").  The courts agree that "an administrative closing has no effect other than to remove a case from the court's active docket[.]" *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 392 (1st Cir.1999); *Thompson v. Warren*, No. CIV.A. 11-7164 RMB, 2014 WL 3778738, at *12 (D.N.J. July 31, 2014) ("Administrative termination is a procedural device that allows a district court judge to get an inactive case . . . off the list of pending cases.").